ATTORNEY GRIEVANCE COMMISSION OF MARY-
LAND v. LEONARD WALTER BURKA

[Misc. (BV) No. 4, September Term, 1981.]

*Decided December 29, 1981.*

The cause was argued before Murphy, C. J., and Smith,
Digges, Eldridge, Cole, Davidson and Rodowsky, JJ.

*Walter D. Murphy, Jr., Assistant Bar Counsel,* for peti-
tioner.

*Charles E. Wilson, Jr.,* for respondent.

Cole, J., delivered the opinion of the Court.

The issue presented here is whether, under the facts of this
case, a psychiatrist's diagnosis of "anxiety neurosis with
associated depression" is a compelling extenuating circum-
stance such that it would warrant a sanction less severe than
disbarment when an attorney has been found guilty of
behavior involving fraud, deceit, or dishonesty.

The chain of events pertinent to resolution of this issue began in August of 1974. At that time Leonard Burka had a successful law practice in the District of Columbia and in the State of Maryland. He was apparently regarded as a respected practitioner who had never before been accused of untoward conduct in the practice of his profession. In August of 1974 Burka's father suffered a debilitating stroke that required the use of life support equipment to keep him alive. After consultation with the doctors, Burka made the decision to discontinue the heroic efforts to preserve his father's life. As a result, Burka's father expired on August 24, 1974.

On May 12, 1975, Burka was appointed successor conservator of the Estate of Rose E. Leonard by the Superior Court of the District of Columbia. Burka apparently did not ask for this assignment but he accepted it and its attendant responsibilities. Between October 9, 1975 and May 21, 1976, Burka made fifteen unauthorized withdrawals from the Leonard Estate checking account in the total amount of $41,100. Roughly half of that sum corresponds by date and amount to deposits and withdrawals from Burka's personal checking account. By December 14, 1977, Burka had paid into the estate account all the money he was accused of taking, plus interest, so that there is no evidence that the estate suffered any ultimate injury.

In April of 1979 Burka was called before the District of Columbia Bar Hearing Committee for disciplinary proceedings regarding the misappropriation of his client's funds. He appeared without counsel and admitted to taking the funds. He did not at that time raise any issue regarding his mental health. He failed to respond to Bar Counsel's request for information before the hearing and was unable to relate how much money he had taken, when he had taken it, or to what use he had put the money. Burka requested and received two weeks [1] to find out the information he was

---

1. In his findings of fact for this case Judge Fairbanks of the Montgomery County Circuit Court stated that Burka was given seven days to provide this explanation. A reading of the transcript of the Hearing Committee's proceedings, however, reveals that the District of Columbia Bar Counsel was given one week to submit its memorandum and Burka was given an additional week to make his response.

unable to provide. He did not supply the information. Subsequently, two members of the Committee voted to disbar him and the third recommended a five year suspension.

On August 17, 1979, Burka, through his counsel, filed a motion with the District of Columbia Board of Professional Responsibility to stay the proceedings before the Disciplinary Board and to remand for further proceedings predicated on new evidence, raising the issue of his mental disability for the first time. He appended a letter indicating that on August 10, 1979, he had consulted a psychiatrist, Dr. Sydney Shankman, who diagnosed his condition as anxiety neurosis with associated depression, caused by guilt feelings generated from Burka's role in his father's death. Dr. Shankman's letter opined that Burka's guilt feelings resulted in a desire to punish himself and that these were the motivations behind Burka's misappropriation of his client's funds. Later, at the hearing on the motion, the Board offered to postpone its proceedings if Burka would voluntarily refrain from practice until a determination was made. Burka refused and the Board ordered disbarment.

In its report the Board of Professional Responsibility stated that it was unconvinced that Burka's misconduct was the result of his mental condition. In the Board's opinion the psychiatrist's letter was weak and presented unexplained inconsistences. For instance, Dr. Shankman felt that Burka was incapable of taking care of his own affairs but capable of taking care of the affairs of others. Dr. Shankman also said that Burka was not seeking personal gain, yet the financial statement made in the Report of the Auditor Master shows that $20,224.72 [2] was expended by Burka for personal use, e.g., car note, home mortgage loans, country club dues, college tuition for his children, coat for his wife, and household bills. Furthermore, the Board noted that the psychiatric examination took place four years after the misconduct occurred and found that there was no evidence that Burka's mental condition affected his personal affairs or his clients' affairs, or that Burka was anti-social.

---

2. There was no explanation offered of what happened to $20,775.28 of the $41,000.00 taken from the Leonard Estate.

The District of Columbia Court of Appeals affirmed the decision of the Board of Professional Responsibility in *Matter of Burka,* 423 A.2d 181 (D. C. App. 1980). Specifically, Burka was found guilty of violating the following disciplinary rules:

(1) DR 9-102 (A), knowingly commingling estate funds with his own;

(2) DR 9-102 (B) (3), failing to maintain complete records and render appropriate accounts of client funds;

(3) DR 9-102 (B) (4), failing to pay over promptly funds which his client's account was entitled to receive;

(4) DR 1-102 (A) (4), engaging in dishonesty and deceit in making unauthorized withdrawals of client funds for his own use; and

(5) DR 1-102 (A) (5), engaging in conduct prejudicial to the administration of justice in failing to turn over assets of the estate properly to the court or successor conservator, and in failing to submit bank statements to the Auditor upon request.

The Attorney Grievance Commission of Maryland thereafter brought these proceedings against Burka and it recommended that Burka be disbarred in this State. At an evidentiary hearing before Judge Philip M. Fairbanks of the Circuit Court for Montgomery County Burka was found to have violated these disciplinary rules:

a. Disciplinary Rule 1-102 (A) (1), a lawyer shall not violate a disciplinary rule;

b. Disciplinary Rule 1-102 (A) (3) by his unauthorized removal of funds from the Estate of Rose E. Leonard, and a diversion of those funds to his personal use;

c. Disciplinary Rule 1-102 (A) (4) by engaging in

conduct involving dishonesty, fraud, deceit, or misrepresentation;

d. Disciplinary Rule 1-102 (A) (5) by engaging in conduct that is prejudicial to the administration of justice;

e. Disciplinary Rule 7-102 (A) (3) in representing a client by concealing or knowingly failing to disclose that which he is required by law to reveal;

f. Disciplinary Rule 7-102 (A) (8), by knowingly engaging in other illegal conduct or conduct contrary to a disciplinary rule;

g. Disciplinary Rule 9-102 (A) by failure to keep all moneys from the ward's account at all times in a separate, identifiable bank account;

h. Disciplinary Rule 9-102 (B) (3) by not maintaining complete records of all funds of the ward's account coming into his possession and by not rendering appropriate accounts;

i. Disciplinary Rule 9-102 (B) (4) by not promptly paying over to the court on behalf of the ward all funds in respondent's possession which the ward's account was entitled to receive.

There is no real issue as to Burka's guilt in this matter.[3] Instead, our sole concern here is whether Burka should be allowed to escape disbarment for his misconduct.

We have been steadfast in adhering to the principle that attorney conduct which involves moral turpitude and is infected with fraud, deceit, or dishonesty shall require disbarment unless the attorney can demonstrate by clear and convincing evidence that there are compelling extenuating circumstances that merit a less onerous sanction. *Attorney Grievance Commission v. Flynn,* 283 Md. 41, 45, 388 A.2d 775 (1978); *Bar Association of Baltimore*

---

**3.** Md. Rule BV 10.e.1 provides that "[a] final adjudication in a disciplinary proceeding . . . that an attorney has been guilty of misconduct is conclusive proof of the misconduct in the hearing of charges pursuant to this Rule."

*City v. Siegal,* 275 Md. 521, 527, 340 A.2d 710 (1975); *Maryland State Bar Association v. Agnew,* 271 Md. 543, 553, 318 A.2d 811 (1974). The reason for such a strict rule is to insure public confidence in the attorneys of this State and to "protect the public from one who has demonstrated his unworthiness to continue the practice of law," *Bar Association v. Marshall,* 269 Md. 510, 519, 307 A.2d 677 (1973).

Burka argues that he should fall within the "compelling extenuating circumstances" exception. He bases this argument on (1) the debilitating influence anxiety neurosis with associated depression had on him and (2) his cure from the effects of his prior mental condition. We have referred at length to the report of the District of Columbia Board of Professional Responsibility and conclude that its observations were accurate and persuasive. Burka waited four years from the point of his misconduct to the time he sought professional advice. During this period his mishandling of the Leonard Estate was apparently the only instance where his mental condition interfered with the conduct of his practice. Restricting the time frame even further to the period when Burka alleges he was acting under the stimulus of this mental malady, Burka withdrew funds fifteen times over a seven month period from the estate account yet did not mishandle any of the other affairs entrusted to his care. We find that this selective influence of his neurosis, plus his ability to manage his practice throughout the four year period, to be cogent evidence that Burka was not forced by his mental condition to perform these acts.

In so concluding, we follow our prior decisions on this point. We have found on several occasions that an attorney's mental condition was a compelling extenuating circumstance where a disabling condition impeded the attorney from conducting his practice and which required treatment for removal. *Attorney Grievance Commission of Maryland v. Flynn, supra,* and *Attorney Grievance Commission v. Cooper,* 279 Md. 605, 369 A.2d 1059 (1977), both involved situations where an attorney's dishonesty substantially resulted from mental illness, in each case stemming from the

degenerative effects of alcohol abuse. In *Flynn* the attorney's lifestyle and personality had undergone radical change as a result of his dependency on alcohol and he was in the process of closing his law practice when the misconduct occurred. 283 Md. at 46. In *Cooper* the three judge panel reviewed the attorney's medical records and found physical infirmities exacerbated by chronic alcoholism which led to a disintegration of the attorney's mind and body. 279 Md. at 612.

Burka cannot and does not contend that his misconduct was the result of a disabling mental infirmity that would require treatment for removal. In fact, he has submitted for our perusal six volumes of the file of a complicated civil case that went on from 1973 to 1979 in which Burka played a key role. He has also proffered testimony and affidavits from attorneys and others to the effect that he is a competent, trustworthy attorney. In light of these circumstances it is implausible to reach the conclusion that Burka's conduct was the result of extenuating or compelling circumstances.

We hold, therefore, that Burka has failed to show a compelling reason why he should not be disbarred. For this reason, it shall be ordered that the name of Leonard Walter Burka be stricken from the roll of those authorized to practice law in this State.

> *It is so ordered; respondent shall pay all costs as taxed by the Clerk of this Court pursuant to Maryland Rule BV15 c for which a judgment in the amount of $645.00 is entered in favor of the Attorney Grievance Commission against Leonard Walter Burka.*