### In re Jack B. SOLERWITZ, Respondent.

### A Member of the Bar of the District of Columbia Court of Appeals.

### No. 89–609.

District of Columbia Court of Appeals.

Submitted April 11, 1990.
Decided May 30, 1990.

Before ROGERS, Chief Judge, NEWMAN, Associate Judge, and KERN, Senior Judge.

PER CURIAM:

On June 17, 1988, the United States Court of Appeals for the Federal Circuit suspended Respondent, Jack B. Solerwitz, for one year from practice before that tribunal. *In re Solerwitz*, 848 F.2d 1573 (Fed.Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 784, 102 L.Ed.2d 775 (1989). This court directed the Board on Professional Responsibility (the Board) to recommend whether the identical discipline should be imposed in this court. The Board recommends that respondent be disciplined because his misconduct, as found by the Federal Circuit Court of Appeals, constitutes misconduct under this court's Disciplinary Rules. The respondent has not challenged, and Bar Counsel supports, the Board's Report and Recommendation.

Specifically, the Board concluded that the respondent's misconduct, consisting of filing a series of frivolous appeals, repeatedly violating court orders, and consistently failing to follow appropriate procedural rules and otherwise interfering with the Federal Circuit's work, constituted violations of DR 1–102(A)(5) (engaging in the conduct prejudicial to the administration of justice), and DR 7–102(A)(2) (knowingly advancing unwarranted claims). We approve and adopt the Report and Recommendation of the Board which is attached to this opinion.

Accordingly, it is hereby ordered that respondent, Jack B. Solerwitz, be publicly censured.

*So ordered.*

REPORT AND RECOMMENDATION
OF THE BOARD ON
PROFESSIONAL RESPONSIBILITY

. This proceeding arises under Section 18(2) of Rule XI, which deals with the imposition of reciprocal discipline on members of our Bar who have been disciplined for attorney misconduct in other jurisdictions. On June 17, 1988, the United States Court of Appeals for the Federal Circuit (hereinafter "Federal Circuit") suspended Respondent for one year from practice before that tribunal. *In re Solerwitz,* 848 F.2d 1573 (Fed.Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 784, 102 L.Ed.2d 775 (1989). When this was brought to the attention of the District of Columbia Court of Appeals, the Court, by order dated June 13, 1989, directed the Board to recommend whether the identical discipline should be imposed here or whether other procedures should be followed.[1]

Respondent urges that we not recommend imposition of reciprocal discipline because of the existence of one or more of the factors set forth in Section 18(5)(a) through (e) of Rule XI. If any of those factors is found, reciprocal discipline is not to be imposed. Bar Counsel takes the position that reciprocal discipline should be imposed because none of the cited factors exists and because the sanction imposed by the Federal Circuit is "roughly equivalent" to the sanction that would be imposed here for similar misconduct.

For the reasons discussed below, the Board recommends that Respondent be disciplined by the District of Columbia Court of Appeals, but that a less stringent sanction than suspension for one year be imposed. The Board does not deem it necessary to direct *de novo* evidentiary hearing in this matter.

### Procedural Background

These proceedings had their origin in the 1981 strike by Federal air traffic controllers. Because the strike was held to be illegal, the Government dismissed approximately 11,000 controllers who had joined in the work stoppage. Respondent's law firm was retained by many of the discharged controllers to try to gain for them reinstatement or other redress.

As Federal employees, the discharged controllers had certain procedural remedies available before the Merit Systems Protection Board and, from there, before the Federal Circuit. More than 10,000 of the discharged controllers appealed to the MSPB and, thereafter, more than 4,500 individual petitions for review were filed with the Federal Circuit. Before the Board, Respondent's firm represented more than 800 controllers, many of whom went on to file review petitions with the Federal Circuit.

Because the large number of controller appeals threatened to overwhelm the resources of the then newly-established Federal Circuit, the Court worked out procedures to streamline these proceedings. Among the devices used was the designation of certain appeals as "lead cases." These were "typical" cases that were deemed to present legal issues common to many other pending appeals. These "lead cases" were scheduled for expedited briefing and oral argument, while all other pending cases were stayed. One of Respondent's cases was a "lead case."

After the "lead cases" were decided adversely to the controllers (and after the United States Supreme Court denied writs of certiorari), counsel for the other controllers, whose cases had been stayed, were notified by the Court that, if they wished to continue to prosecute their appeals, specific affirmative steps had to be taken. One of the requirements to proceed with an appeal was the filing of a statement identifying specific issues in the appeal that had not been adversely decided by the "lead cases." Counsel were repeatedly warned about the impropriety of maintaining frivolous appeals in the face of the decisions in "lead cases."

---

1. Because Respondent did not discontinue his practice in this jurisdiction when his suspension went into effect before the Federal Circuit, this case would not be mooted even if Respondent's one-year suspension in the Federal Circuit expired before the instant proceedings were concluded.

The Federal Circuit ruled that, notwithstanding these warnings, Respondent engaged in misconduct as follows:

(a) he filed and maintained petitions that were clearly frivolous;

(b) he abused the judicial process;

(c) he filed briefs devoid of any showing on which the decision appealed from could possibly be reversed, or on which earlier decisions of the Federal Circuit could be distinguished;

(d) he violated procedural rules of the Federal Circuit pertaining to appendices and citations to the record in briefs;

(e) he filed reply briefs that ignored many authorities cited by the Government;

(f) he advanced arguments in his briefs that were not properly before the Court because they had not been raised below or for other reasons; and

(g) he failed to support assertions in his briefs with references to the record.

For these actions, Respondent was sanctioned by being ordered to pay damages to the Government, the appellee, in the amount of $78,300. This sanction was imposed under authority of Rule 38 of the Federal Rules of Appellate Procedure, which provides that "[i]f a court of appeals shall determine that an appeal is frivolous, it may award just damages and single and double costs to the appellee."

On January 21, 1987, the Federal Circuit went further and entered an *en banc* order requiring Respondent to show cause why he should not also be suspended from the bar of the Federal Circuit for two years for some of the same actions for which he had been sanctioned. Respondent was charged under Rule 46(b) of the Federal Rules of Appellate Procedure with conduct "unbecoming a member of the bar of the court." Respondent requested and was afforded an evidentiary hearing, which was conducted by a senior judge of the Federal Circuit who had not previously been involved in the controller cases.

The hearing was non-adversary, in the sense that the Court was not represented by a "prosecuting" counsel. Respondent presented evidence through several fact witnesses, as well as three expert witnesses who discussed the issues of professional conduct and legal ethics that bore on Respondent's handling of the controller cases. These experts opined that Respondent had not only not acted improperly, but that his handling of the controller appeals was only zealous advocacy, consistent with the highest traditions of the bar.

On December 10, 1987, the hearing judge filed numerous findings of fact. On the basis of these findings, it was concluded that Respondent had, in fact, exceeded ethical limits and engaged in conduct unbecoming a member of the bar of the Federal Circuit, in violation of Rule 46(b). The judge recommended that Respondent be suspended from practice before that Court for two years. However, it was recommended that Respondent be placed on probation and that the two year suspension be held in abeyance. This recommendation was based on the judge's view that, because this was a case of first impression, Respondent may not have had notice that his misconduct could subject him to disciplinary proceedings over and above the monetary sanctions that had been levied under Rule 38.

Respondent filed exceptions with the Federal Circuit, which, on June 17, 1988, rendered a decision adopting the hearing judge's determination that Respondent had engaged in conduct unbecoming a member of the bar of the Court. However, the Federal Circuit rejected the recommendation that the suspension be held in abeyance while Respondent served probation. The Federal Circuit ordered Respondent suspended for one year.

### Reciprocal Discipline

This Board must now recommend whether the identical discipline should be imposed here. Under Section 18(5) of Rule XI, reciprocal discipline is to be imposed unless:

(a) the procedure followed in the Federal Circuit "was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process"; or

(b) there was such "infirmity of proof establishing the misconduct as to give

rise to the clear conviction that the Court could not, consistent with its duty, accept as final the conclusion on that subject"; or

(c) the imposition of the same discipline by the District of Columbia Court of Appeals would result in grave injustice; or

(d) the misconduct proven warrants substantially different discipline in this jurisdiction; or

(e) the actions proven do not constitute misconduct in the District of Columbia.

Based on our review of the record, we conclude that the procedures followed in the Federal Circuit did not deprive the Respondent of due process rights. We further find that there was adequate proof to support the Federal Circuit's conclusion that Respondent had engaged in conduct unbecoming a member of the bar of that Court. We further find that Respondent's misconduct, as found by the Federal Circuit, constitutes misconduct here. We find, however, that the attorney misconduct would call for less severe discipline in this jurisdiction than a one-year suspension.

### Reciprocal Discipline Factors

(a) *Procedural Due Process.*

■ The order to show cause that initiated the disciplinary proceedings in the Federal Circuit detailed the specific charges against Respondent. Respondent requested a hearing on those charges and one was afforded. Our review of the transcript of that hearing reveals that Respondent's counsel was given wide latitude to adduce all evidence he thought would be helpful to his cause—including wide-ranging expert testimony on legal ethics and attorneys' professional responsibilities.

We see no violation of Respondent's due process rights.[2]

(b) *Adequacy of Proof.*

■ There was no serious dispute before the Federal Circuit as to the precise acts and omissions for which Respondent was disciplined. The evidence of misconduct was the briefs and pleadings that Respondent had filed with the Federal Circuit, as well as the orders, written warnings, and other documents contained in the files of the Federal Circuit. The hearing judge could take official notice of all these materials. The extensive and careful findings of fact entered by the hearing judge make it clear that there was substantial evidence to support the determination of attorney misconduct.

(c) *Whether Respondent's Actions Constitute Misconduct Here.*

There do not appear to be any reported cases in the District of Columbia deciding whether the filing of a battery of frivolous appeals—accompanied by Respondent's other actions as found by the Federal Circuit—amounts to attorney misconduct punishable under the Disciplinary Rules. It is true that the Court of Appeals has observed, as a general matter, that: "... in this jurisdiction the traditional method of dealing with contumacious behavior in the courtroom or in the course of a judicial proceeding is to cite the offender for contempt of court." *In re Evans*, 533 A.2d 243, 245 (D.C.1987). Nevertheless, there are numerous cases where attorneys in this jurisdiction were held in contempt by a court and later disciplined for the same acts or omissions. *See In re Alexander*, 496 A.2d 244, 256 (D.C.1985), and cases there cited.

---

**2.** *Respondent asserts an objection to the Federal Circuit proceedings on the apparent ground that there should have been more of an adversary hearing—with the Court represented by a "prosecutor" of some sort—rather than the inquest-type hearing that was held pursuant to the rule to show cause. Not many jurisdictions or tribunals that discipline lawyers enjoy the benefit of a staff of attorneys similar to our Bar Counsel office, and we can find no case that requires, as a matter of due process, that disciplinary proceedings be "prosecuted." If anything, Respondent benefitted from the absence of a "prosecutor." Moreover, we have found no case holding that going forward by way of show cause orders in disciplinary proceedings is grounds for objection. To the contrary, see such cases as In re Massengale, 554 F.2d 301 (6th Cir.1977). Indeed, the United States Supreme Court disbars its attorneys through the mechanism of "show cause" proceedings. Rule 8, Supreme Court Rules.*

■ There is no reason why attorney misconduct in court, or during the course of legal proceedings, may not be both the subject of disciplinary proceedings and the subject of the trial court's own procedures to deal with such matters. Many provisions of the Code of Professional Responsibility deal expressly with misconduct during the course of legal proceedings (*e.g.,* DR 7–106 ("Trial Conduct"); DR 7–108 ("Communication with ... Jurors"); DR 7–109 ("Contact with Witnesses")). Moreover, some of the sanctions available to courts are intended to achieve different objectives from those addressed by the Code of Professional Responsibility. For example, the monetary sanctions levied on Respondent under Rule 38 by the Federal Circuit were to reimburse the Government for its costs incurred as a result of the misconduct.[3]

■ The real task here, as we see it, is to determine what Disciplinary Rules violations are the equivalent of the offense of "conduct unbecoming a member of the bar," for which Respondent was disciplined in the Federal Circuit. We believe that "conduct that is prejudicial to the administration of justice," under DR 1–102(A)(5) is one offense in the District of Columbia that would be applicable in this situation. We also believe that DR 7–102(A)(2) (knowingly advancing unwarranted claims) would also be violated here.

In the instant case, we are bound by the Federal Circuit's factual determinations that Respondent filed a series of frivolous appeals, repeatedly violated standing court orders, consistently failed to follow appropriate procedural rules and otherwise interfered with the conduct of the Federal Circuit's work—all in a manner that exceeded both zealous advocacy and good faith argument for a change in the law. If the words of the cited Disciplinary Rules are to be given any reasonable meaning, Respondent must be deemed to have knowingly advanced claims "unwarranted under existing law" and otherwise engaged in "conduct prejudicial to the administration of justice."

(d) *Discipline Warranted.*

■ Bar Counsel urges that we impose the same one year suspension on Respondent as was imposed by the Federal Circuit. The basis for this argument is Bar Counsel's view that this case is "most analogous to those cases involving a pattern of misconduct, rather than an isolated instance." Even if we assumed that Respondent's misconduct in handling the controller cases constituted a "pattern" comparable to the "patterns" in the cited cases, the misconduct of the attorneys in the Bar Counsel "pattern" cases is not comparable to the conduct of Respondent here. For example, *In re Alexander,* 496 A.2d 244 (D.C.1985), dealt with a pattern of misconduct that included misrepresentation, dishonesty, and neglect.

Public censure is an established sanction in the District of Columbia for conduct prejudicial to the administration of justice. *In re Doud,* 85–656 (D.C. 7/11/85); *In re Bush, supra; In re Thompson,* 478 A.2d 1061 (D.C.1984). Even in *Evans, supra,* which involved not only a charged violation of DR 1–102(A)(5), but additional charges as well—including a violation of DR 8–102(B) (false accusations against judge)—the Court deemed a public censure to be the appropriate discipline. We think the same sanction should be imposed here to avoid injustice.

## CONCLUSION

Based on the foregoing, the Board recommends that Respondent be disciplined in the District of Columbia, but that the sanction imposed be public censure, rather than

---

**3.** In *In re Snyder,* 472 U.S. 634, 644, 105 S.Ct. 2874, 2881, 86 L.Ed.2d 504 (1985), an attorney discipline case, the United States Supreme Court stated:

> ... [i]t is clear that "conduct unbecoming a member of the bar" is conduct contrary to professional standards that shows an unfit-· ness to discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice. More specific guidance is provided by case law, applicable court rules, and "the lore of the profession," as embodied in codes of professional conduct.

This makes clear the linkage between Rule 46 and the Disciplinary Rules.

a one-year suspension. Because the factual determinations of the Federal Circuit are binding on Respondent, a *de novo* evidentiary hearing is not required. *In re Reid*, 540 A.2d 754, 758 (D.C.1988).

Dated this 13th day of October, 1989.

BOARD ON PROFESSIONAL RESPONSIBILITY

By: /s/ Charles R. Donnenfeld

CHARLES R. DONNENFELD

All Board Members join in this Opinion.